MARIE FANCHONETTE *v.* PIERRE GRANGE and others, Heirs of Laurent Grangé, deceased.

Decision in *Fanchonette* v *Grangé*, 5 Rob. 510, affirmed.

Where the plaintiff offered in evidence a duly certified copy of a notarial act, purporting to have been made from a complete and perfect original, together with the record book of the parish judge, acting, *ex officio,* as a notary, in which the act appears to have been recorded several years before the trial, and evidence to show that, at the time of the judge's death, his office was in great confusion, that many acts were found incomplete, and the originals of many others lost, an original will be presumed to have existed, and the copy be received as evidence ; and this, though an incomplete original of the act of which the copy was offered, may have been found among his papers.

APPEAL from the District Court of Lafayette, *Boyce,* J.

GARLAND, J. The plaintiff sues for $10,000 damages, which she alleges she has sustained, in consequence of the illegal and forcible seizure and detention of her person and of her two

children by the defendants, and the assertion by them that she is a slave, and their property, forming a portion of the succession inherited by them from Laurent Grangé, deceased, to whom she formerly belonged. She avers that she is a free woman, having been regularly emancipated by Laurent Grangé in 1836, and that the allegation that she is a slave is unfounded ; wherefore she asks for a judgment for the damages claimed, and that she and her children may be decreed to be free, said claim having, as ot Louis Grangé, been already recognised and adjudged by a judgment against Louis Grangé, one of the defendants, affirmed at the last term of this court.

The defendants, for answer, aver, that the judgment rendered last year in favor of the plaintiff against Louis Grangé, is not binding on any of them, unless it be said Louis, as they were not parties to it ; that the said plaintiff and her children are slaves, never having been legally emancipated ; that the pretended act of emancipation, on which she bases her claim to freedom, never existed ; and that no original of the copy of the act of emancipation exhibited by plaintiff ever existed, there being only in the parish judge's office an act *sous seing privé,* not signed by him, and only attested by one witness.

On the trial, the plaintiff gave in evidence the record of the suit of herself against Louis Grangé decided at the last September term of this court, (5 Rob. 510) for the purpose of proving that she had been recognised and declared to be a free woman, in an action with one of the heirs of Laurent Grangé. She also offered the duly certified copy of an act of emancipation, purporting to have been passed before the late judge of Lafayette, now dead ; said copy purporting to have been made from a complete and perfect act. She also produced the record book of said judge, on which said act appears to have been recorded, in the words of the copy produced, some six or seven years before the trial. She further proved that at the death of the judge, the office was in great confusion, and that many originals of acts recorded could not be found. Many were incomplete, and others supposed to have been lost. The proceedings of the police jury, authorising the emancipation of the plaintiff were introduced, and generally all the testimony given

on the trial of the first suit. The plaintiff also proved, that a short time after the decision of this court, in her suit against Louis Grangé, that individual, together with one of his co-heirs, forcibly took her and her children into possession, still alleging a claim to them.

On the part of the defendants, it was shown, that the plaintiff always resided with Laurent Grangé after her emancipation, until the time of his decease, about eighteen months before the trial ; and one witness says, that she was his concubine. Greig, whose name is mentioned as a subscribing witness to the act of emancipation, in the copy produced, says he has no recollection of having signed the original. That he has signed a great many acts as a witness, sometimes seeing the parties sign, and sometimes not. His office was close to that of the judge, and he was often called on to attest acts and documents. As to Hall, the other witness, it is proved that he is dead; that at the time of the act of emancipation, he was a clerk for the parish judge, and his signature to the incomplete act, is proved to be genuine. The present parish judge says that he cannot find in his office any original of the act of which a copy is produced ; that it is recorded in its proper place, in the hand writing of a former clerk of his predecessor ; and he produces an act similar in all respects to the copy, except that it is only signed by Laurent Grangé, and Hall as witness. Neither the signature of Greig as a witness, nor of the judge is affixed, nor are the names of the witnesses mentioned in the concluding part, as in the copy and in the record. This witness, as well as O'Brien, who was employed by the police jury of the parish to examine and arrange the papers in the office after the death of the judge, sustain the witnesses of the plaintiff in the fact, that many acts are recorded, the originals of which cannot be found ; that there are some incomplete, having only the formal caption and conclusion, which are signed by the parties ; and that many other acts were not recorded in the books prepared for the purpose. There was a judgment in favor of the plaintiff, declaring her and her children free, and giving $100 damages against Louis Grangé, from which the defendants have appealed.

As to the question, whether the judgment in favor of the plaintiff in her suit against Louis Grangé, as one of the heirs of Laurent Grangé deceased, has the effect of the thing adjudged against the other heirs, it is not necessary now to decide it, further than to say that that judgment is binding and conclusive on said Louis Grangé. The right of the plaintiff to her freedom was the principal question in that suit ; it was decided in her favor ; and there is no justification or excuse for him, in aiding to reduce the plaintiff to a state of slavery, after she had been declared free by a competent tribunal.

All the questions raised in this case, except the one as to the force and effect of the copy of the act of emancipation produced by the plaintiff, of which it is said no original ever existed, were discussed and decided in the case decided last year, and we consider it unnecessary to restate or reargue them. All the acts of the Legislature relative to the emancipation of slaves, were examined and considered ; the proceedings of the police jury of the parish of Lafayette, which led to the emancipation of the plaintiff, were there fully stated, and their effects decided on ; and it only remains for us to determine the question not decided at the last term, although it was then examined, and which has been again considered.

It appears to us that the counsel for the defendants has been unsuccessful in his attempt to make a distinction between this case, and that of *Montreuil*, &c., v. *Pierre.* 9 La. 357. If their be any difference, it is in the fact that the act emancipating the plaintiff, was recorded by a clerk in the record book in the judge's office, in the same words as in the copy produced, which strengthens the presumption that an original existed. The copy produced is certified as having been given in October, 1836. It is not pretended that it has been ante-dated, and the fact is that the judge who certifies it, was dead before this difficulty commenced. The counsel for the defendants, relying alone upon the fact of his having produced an incomplete act, found in the judge's office after his decease, calls on us, notwithstanding the production of a copy of a complete act, and proof of its record by another person than the judge, to presume that no original existed, and to say, that the judge committed a forgery, was

guilty of a gross violation of law, his duty, and obligations, and that a clerk in his office aided and assisted in it, without showing that there was any motive or inducement on the part either to do wrong, or to commit an error. This is asking us to presume against what we think is the weight of the testimony, and the presumption of law that public officers do their duty until the contrary is shown, in a case involving the personal liberty of the plaintiff and her children.

The judgment of the District Court is, therefore, affirmed with costs, and ten per cent damages against Louis Grangé, on the sum of one hundred dollars, for a frivolous appeal.

*I. E. Morse,* for the plaintiff.

*Voorhies,* for the defendants.